IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Sally McGinnis, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 50445 |
| vs. | ) | |
| | ) | |
| Costco Wholesale Corporation Employee | ) | Judge Philip G. Reinhard |
| Benefits Program, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants' motion to dismiss [22] is granted. The first amended complaint [13] is dismissed without prejudice. If plaintiff believes she can file an amended complaint, consistent with the requirements of Fed. R. Civ. P. 11, that states a claim upon which relief can be granted, she may do so on or before November 19, 2021.

## STATEMENT-OPINION

Plaintiff, Sally McGinnis, brings this action against defendants, Costco Wholesale Corporation Employee Benefits Program ("Program"), Costco Benefits Committee ("Committee"), and Costco Wholesale Corporation ("Costco"), alleging violation of the terms of her Summary Plan Description (Count I), breach of fiduciary duty (Count II), and violation of 29 U.S.C. §§ 1021(a) and 1166(a)(1) (Count III). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B). Defendants move to dismiss [22] for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## Facts

The facts are taken from plaintiff's first amended complaint [13] and from two documents referenced therein -- her employment agreement ("Agreement") [25-2] and the Costco Employee Benefits Program Summary Plan Description ("SPD") [25-1].

### Complaint

The complaint alleges Costco hired plaintiff on July 6, 2016 as a "Limited Part-Time Employee". She works in Costco's Lake in the Hills, Illinois store. When she interviewed for the job defendant's managers advised plaintiff that she would become a part-time hourly employee, and become entitled to employee benefits, including health insurance, if she was still employed by defendant 90 days after being hired. The managers also advised her that she would

need to average at least 23 hours per week to maintain her eligibility for employee benefits, including health insurance.

Plaintiff averaged 23 or more hours per week working for Costco for at least 90 days after she was hired and has continued to average 23 or more hours per week working for Costco. She did not receive health benefits after 90 days of working for Costco. Had plaintiff received health benefits 90 days after her date of hire, she alleges her health benefits would have begun October 1, 2016.

Except for the Location Manager at the Lake in the Hills store, Costco's consistent practice and procedure is to change the status of Limited Part-Time Employees who are still employed after 90 days and who desire to become regular part-time employees to regular part-time employees after 90 days. Other limited part-time employees hired by Costco received employee benefits after 90 days of work. Other employees at the Lake in the Hills store received health benefits 90 days after their date of hire.

Alternatively, the complaint alleges that under the SPD plaintiff became eligible for health benefits on the first day of the second month after plaintiff had worked 450 hours. The first day of the second month after plaintiff worked 450 hours was January 1, 2017. Plaintiff claims she was eligible to be enrolled in the benefits program on that date. Plaintiff was not enrolled in the Costco Benefit Program until May 1, 2017. Plaintiff alleges her manager prevented her from obtaining health benefits on her claimed eligibility date.

Plaintiff also alleges the Committee violated its fiduciary duty by failing to provide plaintiff with health benefits as of January 1, 2017 in that it failed to monitor the persons at the Lake in the Hills store responsible for enrolling employees in the Costco Benefit Program and allowed them to exclude plaintiff even though employees were supposed to be enrolled by default. She alleges Costco knew or should have known of its employee's failure to enroll plaintiff and participated in the failure.

Because defendants did not enroll plaintiff in the health benefit plan, plaintiff carried health care continuation coverage with her former employer from October 1, 2016 to May 1, 2017. Her premiums for the health care continuation coverage were at least $10,000 greater than the portion of the premiums she would have paid if enrolled in the defendants' health benefit plan.

Plaintiff alleges defendants failed to provide her notice of her plan benefit rights required by 29 U.S.C. § 1166(a)(1) and failed to provide her a summary plan description under 29 U.S.C § 1021(a) until her enrollment.

For relief, plaintiff seeks an award of the benefits she should have received from the Program as of October 1, 2016 (Counts I and II), a remand of her claim to the Committee for the Committee to award her the benefits she should have received from the Program as of October 1, 2016 (Count I); and an award making her whole for the premiums she was required to pay for her health care continuation plan with her former employer in excess of $10,000 by virtue of defendant's fiduciary breach (Count II); and $100 per day from July 1, 2016 until the date one of

defendants notified her of her plan benefit rights under 29 U.S.C. § 1166(a)(1) and 1132(c)(1) (Count III).

*Agreement*

Under the Agreement, "Limited Part-time Employees" are those employees who "[a]re regularly scheduled less than 24 hours per week by mutual agreement between you and the Location Manager." *Dkt # 25-2, p. 12.* Limited part- time employees "[a]re not eligible for medical, dental, and vision benefits." *Id.*

"Part-Time Employees", under the Agreement, are those employees who "[a]re regularly scheduled less than 40 hours per week, but are guaranteed to be scheduled no less than 24 hours per week." *Id.* Part-time employees, unlike limited part-time employees, can become eligible for benefits under the SPD.

The Agreement provides, for limited part-time employees, that "[i]f you are scheduled limited part-time and, by mutual agreement between you and the Location Manager, choose to move to a regular part-time schedule, then you will immediately be reclassified to part-time status and begin accruing hours to become eligible for benefits." *Id.*

Section 4.0 of the Agreement is titled Employment Status Change. Section 4.1 is titled Automatic Changes to Status. Section 4.1. A. provides: "Part-time employees who are scheduled to work an average of 40 hours per week or 38 hours per week (four 8-hour days plus at least six hours on Sunday) for eight consecutive weeks in their own department will be promoted to full-time. This does not apply during Seasonal periods in any Costco business, during your 90-day Probationary period, or while working in a posted Temporary Job." *Dkt # 25-2, p. 14.* Section 4.1.B. provides full-time employees who average less than 36 hours per week during two consecutive measurement periods will be reclassified to part-time. There is no provision in the Automatic Change to Status section providing for any automatic change in status from limited part-time status to part-time status.

*SPD*

The SPD is the plan document for the Costco health care plans. *Dkt # 25-1, p. 3.* It provides: "The Costco Employee Benefit Program is available to those U.S. employees classified by Costco and on Costco's payroll system as regular salaried, full-time hourly or part-time hourly employees, and who receive a form W-2 as a result. Employee classifications are defined in the Costco Employee Agreement." *Id.* p. 10. The SPD states an employee is not eligible for benefits if the employee is a "temporary or limited part-time employee." *Id.*

The SPD provides: "You must satisfy a waiting period before you are eligible for Costco employee benefits. Health care and most other coverage will begin on your benefit effective date, which depends on your employee classification, as shown below." *Id.* The benefit effective date for a "Part-time hourly employee" is stated to be the "First day of the second month after 450 paid hours." *Id.*

"Officers and employees of Costco at the various Costco locations and other third parties are not authorized to represent or speak on behalf of the Costco Employee Benefit Program, the **plan administrator**, the **Benefits Committee**, the **claims administrator**, or **claims fiduciary** for any Plan." *Id.*, p. 4.

The SPD provides "that a dispute solely as to whether you have met the requirements for enrollment or eligibility under the plan is subject to the plan's internal claim and appeal procedures set forth in this booklet, as if it were a non-medical benefit claim. The internal appeal procedures need to be exhausted for such disputes before you can bring a civil action under Section 502(a) of ERISA." *Id.*, p. 130.

The SPD has the following limitations provision: "In order to bring a lawsuit in court regarding your claim, you must file suit within two years after your appeal (or your external review, if you requested one) is denied or, if earlier, the date your cause of action first accrued." *Id.*, 137.

## Motion to Dismiss

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted arguing that plaintiff was not eligible for benefits, failed to exhaust administrative remedies, and her claims are barred by the applicable statutes of limitations. On a motion to dismiss, the court considers the complaint itself, as well as documents that are critical to the complaint and referred to in it, and facts set out in plaintiff's brief, so long as those facts are consistent with the complaint. *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). Where a document referenced in the complaint contradicts the complaint's allegations, the document takes precedence. *Id.* at 1020.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009). A plaintiff's "claim for relief" is his expression of the wrong done to him. Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997). It is "the aggregate of operative facts which give rise to a right enforceable in the courts." Sojka v. Bovis Lend Lease, Inc., 686 F.3d 394, 399 (7th Cir. 2012) (quotation marks and citations omitted). Stated more succinctly, a claim is "a grievance." Albiero, 122 F.3d at 419.

Plaintiff has two claims: (1) that she was denied health benefits to which she was entitled because she was wrongly denied enrollment in the health benefits plan at the time she became eligible for enrollment and (2) that she was not provided notice of her plan benefits and summary plan description in violation of 29 U.S.C. § 1166(a)(1) and 29 U.S.C § 1021(a). Plaintiff supports her claim that she was denied health benefits for which she was eligible with two separate legal theories set out in separate counts of the complaint. The Count I legal theory is that defendants violated the terms of the SPD. The Count II legal theory is that defendants

breached a fiduciary duty to plaintiff when they failed to make sure she was timely enrolled for health benefits.  She argues that the Agreement and the SPD must be read together to determine her eligibility for benefits under the SPD.

**Denial of Benefits**

*Under SPD Terms (Count I)*

The complaint alleges two alternative dates when plaintiff became eligible for health benefits:  October 1, 2016 and January 1, 2017.  She alleges eligibility on October 1, 2016 based on (1) representations made to her when she was hired that she would become eligible for benefits after 90 days of employment and (2) defendants' general practice of treating employees as eligible for health benefits after 90 days of employment.  Alternatively, the complaint alleges plaintiff became eligible for health benefits under the eligibility standard set by the SPD for part-time hourly employees-- the first day of the second month after working 450 hours—which, plaintiff alleges was, for her, January 1, 2017.  She was not enrolled for health benefits until May 1, 2017.

The SPD is clear that no employee of Costco can make representations that alter the terms of the plan ("[T]he Program, Costco, its employees, Program fiduciaries, and administrators are not bound by any oral or written communication that conflicts with plan documents." *Dkt* # 25-1, p. 4. "Officers and employees of Costco at the various Costco locations and other third parties are not authorized to represent or speak on behalf of the Costco Employee Benefit Program, the ***plan administrator***, the ***Benefits Committee***, the ***claims administrator***, or ***claims fiduciary*** for any Plan." *Id.*)

The SPD has no provision for eligibility triggered by working as a limited part-time employee or as a part-time employee for 90 days.  The SPD is clear no officer or employee of Costco is authorized to alter the terms of the SPD.  Any representations to plaintiff that she would be eligible for health benefits after 90 days of work were incapable of altering the terms of the SPD to grant her eligibility after 90 days.  Accordingly, plaintiff has not alleged any facts that plausibly suggest plaintiff was entitled to health benefits when she completed 90 days of work for Costco.

Plaintiff alleges in the alternative that she was eligible for health benefits under the SPD as a part-time employee.  The SPD provides that benefits are available to Costco employees "classified by Costco and Costco's payroll system as regular salaried, full-time hourly or part-time hourly employees and who receive a form W-2 as a result." *Id.*, p. 10.  Part-time employees are eligible for medical benefits.  Limited part-time employees are not.

Under the SPD, employee classifications are defined by the Agreement. *Id.*  The Agreement classifies as Part-Time Employees those who are "regularly scheduled less than 40 hours per week, but are *guaranteed* to be scheduled no less than 24 hours per week." (emphasis added) *Dkt* # 25-2, p.12.  Limited part-time employees "[a]re regularly scheduled less than 24 hours per week by mutual agreement between you and the Location Manager." *Id.*  Plaintiff's complaint alleges she was hired as a limited part-time employee and that she worked 23 or more

hours per week for at least 90 days after she was hired on July 6, 2016. She does not allege that she was ever *guaranteed* to be scheduled no less than 24 hours per week.

In her response brief, plaintiff cites to the paragraph of her complaint that quotes the part of the Agreement which states: "If you are scheduled limited part-time and, by mutual agreement between you and the Location Manager, choose to move to a regular part-time schedule, then you will immediately be reclassified to part-time status and begin accruing hours to become eligible for benefits." *Dkt* # 32, p.2. Her response brief then states that her complaint alleges "that she worked 23 or more hours per week for at least 90 days after she was hired" and states that "as provided in the summary Plan Description, she became eligible for health benefits the first day of the second month after she worked 450 hours at Costco, which was January 1, 2017. *Id.*, p. 2-3.

These quotations from her complaint suggest plaintiff is contending that working 23 or more hours per week meant there was a mutual agreement between her and the Location Manager to move her to a regular part-time schedule which, in turn, made her eligible for benefits on the first day of the second month after she had worked 450 hours. However, working more than 23 hours per week is not the defining characteristic of a part-time employee under the Agreement. The defining characteristic of a part-time employee under the Agreement is being *guaranteed* to be scheduled no less than 24 hours per week. *Dkt* # 25-2, p.12. Without an allegation she was guaranteed to be scheduled no less than 24 hours per week, she has not alleged facts that show she had moved "to a regular part-time schedule."

Additionally, the Agreement's Automatic Changes to Status section has explicit provisions for automatic changes in status, on certain conditions, between part-time and full-time statuses. The Automatic Changes to Status section of the Agreement does not provide for any automatic changes from limited part-time to part-time status. Thus, under the Agreement, any change from limited part-time to part-time status cannot occur automatically but only by mutual agreement between the employee and the location manager to move the employee to a regular part-time schedule. Any claim by plaintiff that she automatically changed from limited part-time to part-time status based on hours worked does not find support in the Agreement.

### *Fiduciary Breach (Count II)*

Plaintiff alleges the Committee breached its fiduciary duty to see that she was enrolled for health benefits as of January 1, 2017 "in violation of the terms of the Summary Plan description" when it failed to monitor the persons at the Lake in the Hills store responsible for enrolling employees thereby allowing the responsible persons to exclude plaintiff from being enrolled even though employees were supposed to be enrolled by default. Defendants argue no fiduciary breach occurred because plaintiff was not eligible for enrollment prior to her actual enrollment date- May 1, 2017.

As discussed above, the complaint does not state a claim based on a violation of the terms of the SPD because it does not allege facts which plausibly allege plaintiff became a part-time employee at a time that entitled her to enrollment in the health plan prior to May 1, 2017. Since

plaintiff was not entitled to an earlier enrollment, no breach of fiduciary duty for failing to make sure she was enrolled earlier occurred.

## Exhaustion of Administrative Remedies (Denial of Benefits Claim)

Defendants also argue plaintiff's complaint must be dismissed because she failed to exhaust her administrative remedies under the SPD. Under the SPD, "a dispute solely as to whether you have met the requirements for enrollment or eligibility under the plan is subject to the plan's internal claim and appeal procedures." *Dkt # 25-1, p. 130.*

The complaint does not allege that plaintiff filed an administrative claim disputing whether she had met the requirements for enrollment or was eligible for benefits. In the prayer for relief set out in its Count I, the complaint asks the court to "[r]emand this claim to the Costco Benefits Committee to review Plaintiff's claim and award her the plan benefits she should have received from the [Program] as of October 1, 2016 and enforcing her rights under its terms as of October 1, 2016," *Dkt # 13, p. 5*, but there is no allegation that a claim under the SPD was ever filed. Because the SPD required plaintiff to file an administrative claim to dispute whether she had met the requirements for enrollment or benefit eligibility, she has failed to abide by the SPD's requirement that she file such a claim.

In her response brief, plaintiff seeks leave to amend the complaint "to allege futility or lack of access to the review procedures," citing *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355. 361 (7th Cir. 2011) (ERISA plaintiff's failure to exhaust may be excused by lack of meaningful access to review procedures or futility of pursuing administrative remedies). *Dkt # 32, p. 3.* In making this request for leave to amend, plaintiff states she "has alleged that her manager prevented her and other Costco employees from obtaining health benefits under the Costco Benefits Program when she became eligible." *Id.* However, this allegation does not suggest the manager prevented her from filing an administrative claim under the SPD to dispute the delay in enrolling her in the plan.

## Limitations

### *Plan Limitations Provision*

Defendants argue plaintiff's claim she was denied benefits in violation of the SPD is barred by the limitations provision in the SPD. That provision provides: "In order to bring a lawsuit in court regarding your claim, you must file suit within two years after your appeal (or your external review, if you requested one) is denied or, if earlier, the date your cause of action first accrued." *Dkt # 25-1. P. 137.*

Because failure to comply with a limitations provision is an affirmative defense, a motion to dismiss based on a such a failure should be granted only where the complaints' allegations clearly show the action is untimely. *Chicago Building Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014). A claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B) accrues when a clear and unequivocal repudiation of rights under the plan has been made known to the beneficiary. *Thompson v. Retirement Plan for Employees of S.C.*

*Johnson & Son, Inc.*, 651 F.3d 600, 604 (7th Cir. 2011). Defendants argue the claimed denial of benefits accrued no later than April 30, 2017—the day before she was enrolled for health benefits. This lawsuit was filed more than two years after that date.

Plaintiff chose not to make an argument in response to defendants' argument of untimeliness under the SPD's terms. It is clear from the complaint's allegations that the claim for denial of benefits based on violation of the SPD accrued no later than April 30, 2017 because the complaint alleges plaintiff was enrolled for benefits the next day. Plaintiff filed this action more than two years after she was enrolled. The complaint clearly shows plaintiff's claim for benefits based on a violation of the SPD is untimely.

### *Fiduciary Breach Limitations Provision (29 U.S.C. § 1113)*

Defendants argue plaintiff's claim based on a fiduciary duty breach also is untimely. They contend her claim on this theory of recovery is subject to the three-year limitations period of 29 U.S.C. § 1113(2) which applies to plaintiffs who "had actual knowledge of the breach or violation." They contend plaintiff had actual knowledge of the alleged breach no later than May 1, 2017. She did not file suit until November 13, 2020, more than three years after May 1, 2017. Plaintiff argues that the general six-year limitations period of 29 U.S.C. § 1113(1), where actual knowledge is absent, applies.

"'Actual knowledge' is "knowledge of the essential facts of the transaction or conduct constituting the violation, with the caveat that it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality." *Fish v. GreatBanc Trust Co.*, 740 F.3d 671, 679 (7th Cir. 2014). To determine when plaintiff gained actual knowledge of the alleged breach of fiduciary duty, the court must examine the nature of the alleged breach. *Id.* at 680.

The alleged breach of fiduciary duty is failing to assure plaintiff was enrolled for health benefits when she became eligible. She alleges this failure kept her from receiving health benefits on October 1, 2016 or, alternatively, January 1, 2017. Her allegation she was eligible for benefits on October 1, 2016 was based on representations she alleged were made when she was hired that she would be eligible after 90 days. Based on these allegations, she would have obtained actual knowledge that she had not been enrolled for benefits on, or shortly after, the 90th day and she would have continued to have that knowledge until her enrollment on May 1, 2017.

Plaintiff contends knowledge she had been denied enrollment after 90 days, and thereafter until May 1, 2017, is not "knowledge of the essential facts of the transaction." *Id.* at 679. She maintains, quoting *Fish*, that "[w]hether an ERISA fiduciary has acted prudently requires consideration of both the substantive reasonableness of the fiduciary's actions and the procedures by which the fiduciary made its decision." *Id.* at 680. She argues the complaint does not allege facts which show she had "actual knowledge of the fiduciaries' actions and procedures, and especially whether nor not such actions were substantively reasonable and whether their procedures were sufficient." *Dkt* # 32, p. 5.

*Fish* involved a fiduciary's decision to engage in a transaction otherwise prohibited by 29 U.S.C. § 1106(a) based on the "adequate consideration exception" to such transactions provided by 29 U.S.C. § 1108(e). The economic substance of the transaction was a buy-out by an ESOP of all the other shareholders' stock in the Antioch Company ("Antioch"). Some of those shareholders were fiduciaries of the ESOP. "The buy-out ended badly, leaving Antioch bankrupt and the employee stock ownership plan worthless." *Fish*, 740 F.3d at 674.

The district court had found that the three-year limitations period applied "finding that proxy documents given to plaintiffs at the time of the buy-out transaction and their knowledge of Antioch's financial affairs after the transaction gave them actual knowledge of the alleged ERISA violations more than three years before suit was filed." *Id.* The court of appeals reversed stating "[t]he plaintiffs' claims for breach of fiduciary duty do not depend solely on the disclosed substantive terms of the 2003 buy-out transaction. Their claims also depend on the processes that defendant Greatbanc Trust[1] used to evaluate, to negotiate, and ultimately to approve the ill-fated transaction. The plaintiffs' knowledge of the substantive terms of the buy-out transaction itself therefore did not give them 'actual knowledge of the breach or violation' alleged in this case." *Id.*

Here, plaintiff alleges the Committee had a fiduciary duty "to provide Plaintiff health benefits as of January 1, 2017;" that Costco, the Committee and the Program "failed and refused to enroll Plaintiff in the Costco Benefit Program until May 1, 2017, in violation of [the Committee's] fiduciary duty"; and that defendants "failed to monitor the persons responsible for enrolling employees in the Costco benefit Program at the location as which Plaintiff was employed, and allowed them to exclude Plaintiff from the Costco Benefit Program, even though employees were supposed to be enrolled by default". *Dkt #* 13, p.6.

The complaint's allegations straight-forwardly allege the Committee had a duty to provide her health benefits as of January 1, 2017 and did not do so until May 1, 2017 and that defendants failed to monitor the employees responsible for enrolling her, even though she should have been enrolled by default. None of these allegations suggest that the substantive reasonableness of the fiduciaries' action or the procedures the fiduciaries used in making a decision are in issue. The allegations do not suggest that any relevant decision-making processes were engaged in by the fiduciaries in failing to provide plaintiff with benefits or in failing to see to her being enrolled. The complaint's allegations do not leave open any scenario in which the fiduciaries would have had discretion properly to decide to defer plaintiff's enrollment beyond January 1, 2017. According to the complaint, they were required to see to it that she was enrolled by that date and simply failed to perform this duty.

Based on the allegations of the complaint, plaintiff knew she had not been enrolled before May 1, 2017, and thus, as of that date, had knowledge of the essential facts of the "conduct constituting the violation." *Fish*, 740 F.3d at 679. The facts alleged in the complaint show plaintiff had actual knowledge of the alleged breach of fiduciary duty on May 1, 2017. The claim based on the breach of fiduciary duty theory is untimely.

---

[1] GreatBanc Trust had been appointed as a temporary independent trustee to evaluate the proposed transaction and make an independent decision about whether to agree to it on behalf of the ESOP participants.

**Disclosure Violation (Count III)**

Plaintiff alleges defendants failed to provide her notice of her plan benefit rights and failed to provide her with a summary plan description in violation of 29 U.S.C. § 1166(a)(1) and 29 U.S.C § 1021(a). She seeks as relief, pursuant to 29 U.S.C. § 1132(c)(1), $100 per day from July 1, 2016[2] until the date one of the defendants notified her of her plan benefits.

ERISA requires that "the group health plan shall provide, at the commencement of coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided under this subsection." 29 U.S.C. § 1166(a)(1). ERISA also provides in 29 U.S.C § 1021(a) that "[t]he administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan— (1) a summary plan description described in section 1022(a)(1) of this title." Section 1024(b)(1)(A) provides the administrator shall furnish each participant a copy of the summary plan description "within 90 days after he becomes a participant." 29 U.S.C § 1024(b)(1)(A). 29 U.S.C. § 1132(c)(1) provides that the court, in its discretion, may make any administrator who fails to meet the foregoing requirements "personally liable to such participant or beneficiary in the amount of $100 a day from the date of such failure."

As discussed above, plaintiff has not alleged facts which plausibly allege she became "a participant covered under the plan", or that her "coverage under the plan" began, on a date prior to her enrollment on May 1, 2017. She alleges defendants failed to provide her the notice required by 29 U.S.C. § 1166(a)(1) and the SPD as required by 29 U.S.C § 1021(a) "until her enrollment." *Dkt* # 13, p. 8. However, defendants were not obligated to provide her notice under 29 U.S.C. § 1166(a)(1) prior to commencement of coverage (*i.e.* her enrollment). They were only obligated to provide her the SPD within 90 days after she became a participant upon her enrollment. 29 U.S.C § 1024(b)(1)(A). The complaint does not state a plausible claim for disclosure violations as it does not allege facts supporting a failure to meet the requirements of either 29 U.S.C. § 1166(a)(1) or 29 U.S.C § 1021(a).

Additionally, defendants contend plaintiff's claim for these disclosure violations is untimely as the claim was required to be brought within two years of accrual. ERISA does not provide a statute of limitations for 29 U.S.C. § 1132(c)(1) claims. Defendants argue the applicable statute of limitations is the one Illinois imposes on actions for a statutory penalty, 735 ILCS 5/13-202. The Seventh Circuit has suggested it "might be inclined to find that the [Illinois] two-year statute of limitations for statutory penalties applies to § 1132(c) claims," *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995) and has referred to amounts awarded under § 1132(c) as "statutory penalties." *E.g., Huss v. IBM Medical and Dental Plan*, 418 Fed. Appx. 498, 508 (7th Cir. 2011) ("ERISA provides for enforcement of the disclosure obligation by authorizing reviewing courts to impose penalties on reticent administrators. Administrators who do not comply . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount up to [$110] a day from the date of such failure or refusal.")

---

[2] Presumably, plaintiff means July 6, not July 1, as she alleged she was hired on July 6, 2016.

In *Hakim v. Accenture United States Pension Plan*, 656 F.Supp.2d 801, 822 (N.D. Ill. 2009) (Dow, J.), the court applied the Illinois two-year statute of limitations for statutory penalties to a claim for an award under 29 U.S.C. § 1132(c)(1) after reviewing *Anderson*.[3]  The Seventh Circuit's subsequent statements in *Huss* suggests *Hakim* was correct in treating 29 U.S.C. § 1132(c)(1) as being penal in nature and thus borrowing the Illinois two-year statute of limitations for statutory penalties.  The court will do the same here and, therefore, plaintiff's claims under 29 U.S.C. § 1132(c)(1) are untimely as they were brought more than two years after plaintiff's enrollment on May 1, 2017, which is when she alleges she received the required notice and the SPD.

**Leave to Amend**

Plaintiffs normally should be given leave to amend after dismissal of an initial complaint.[4] Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago, 786 F.3d 510, 518 (7th Cir. 2015).  If plaintiff believes she can file an amended complaint, consistent with the requirements of Fed. R. Civ. P. 11, that states a claim upon which relief can be granted, she may do so on or before November 19, 2021.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss [22] is granted.  The first amended complaint [13] is dismissed without prejudice.  If plaintiff believes she can file an amended complaint, consistent with the requirements of Fed. R. Civ. P. 11, that states a claim upon which relief can be granted, she may do so on or before November 19, 2021.

Date: 10/18/2021                    ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)

---

[3]  *Hakim* sets forth in its footnote 12 decisions from several other courts also applying state statutes of limitation for statutory penalties to actions under 29 U.S.C. § 1132(c).
[4]  While the complaint addressed in this order was a first amended complaint, the original complaint had not been dismissed by the court nor had a motion to dismiss been filed when she exercised her right to voluntarily amend. Fed. R. Civ. P. 15(a)(1)(A).

11